**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEDRO DEJESUS,<br><br>              Petitioner,<br><br>    v.<br><br>STEPHEN D'ILIO, et al.,<br><br>            Respondents. | Civil Action No. 13-5778 (BRM)<br><br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE:**

Before this Court is a Petition for a Writ of Habeas Corpus (the "Petition"), pursuant to 28 U.S.C. § 2254, by Petitioner Pedro DeJesus ("Petitioner" or "DeJesus"). Upon review of all submissions, this matter is decided without oral argument, pursuant to Fed. R. Civ. P. 78. For the reasons stated below, the Court **DENIES** the Petition in its entirety and **DENIES** a certificate of appealability.

## I.   BACKGROUND

The Court recounts only the facts that are necessary to the instant Opinion.[1] Petitioner lived with his girlfriend, Maria Castle ("Castle"), and her two minor children. On the evening of

---

[1] The Court's initial summary of the case is taken from the state court decisions denying Petitioner's appeal and petition for post-conviction relief. *See State v. De Jesus*, Case No. A-5066-04T4, 2006 WL 3053704, at *1 (N.J. Super. Ct. App. Div. Oct. 30, 2006); *State v. DeJesus*, Case No. A-1677-10T3, 2012 WL 5457335, at *1 (N.J. Super. Ct. App. Div. Nov. 9, 2012).

November 18, 2001, Petitioner was drinking and arguing with Castle about her sixteen year-old daughter's failure to attend school. Early the next morning, the sixteen year-old found her mother on the front porch bleeding heavily. Castle told her daughter that Petitioner had stabbed her. Castle later died as a result of her stab wounds. After his arrest, Petitioner cooperated with the police and provided a sworn confession that he had stabbed Castle with a knife from the kitchen drawer. (*See* Br. and App. on Behalf of Def. on Appeal of PCR (ECF No. 10-25) at 111-23.)

At trial, the State's evidence included Castle's dying declaration to her daughter, stating Petitioner had stabbed her, and Petitioner's custodial statement admitting he had done so after an argument. Petitioner offered treatment reports and expert testimony opining he suffered from an impaired mental state because of poly-substance dependence. The State countered with its own expert disagreeing with that conclusion. At trial, defense expert, psychiatrist John Verdon ("Dr. Verdon"), reviewed the report issued after Petitioner's psychiatric examination. Dr. Verdon opined that although Petitioner stabbed Castle, killing her, Petitioner's judgment was impaired due to his substance abuse such that he lacked the capacity to commit a knowing and purposeful murder. In rebuttal, the State's expert, forensic psychologist Louis Schlesinger ("Dr. Schlesinger"), testified Petitioner neither suffered from addiction nor a mental disease or defect which would interfere with his ability to act purposely and knowingly at the time of the stabbing. Petitioner was ultimately found guilty of murder (count one), pursuant to N.J.S.A. 2C:11-3, and unlawful possession of a weapon (count two), pursuant to N.J.S.A. 2C:39-4(d). Petitioner was sentenced on the first count to a prison term of one to thirty years, without the possibility of parole, and on the second count to a concurrent five-year term of incarceration.

At trial, the State brought a motion to introduce a statement of Denise Andrade ("Andrade"), a friend of Castle's, regarding Andrade's telephone call to Castle on the night in

question. (*See* Tr. of Trial, Jan. 4, 2005 (ECF No. 10-7) at 7:1-11:16.) Andrade was prepared to testify that (1) Castle told her during the phone conversation that Castle planned to come to Andrade's house that night with Castle's six-year-old daughter and (2) Andrade overheard Petitioner in the background stating something to the effect of "so that's the way you want it Maria. That's the way I want it." (*See id.*) With respect to the latter statement, the prosecution argued that it was a statement against interest that undermined Petitioner's intoxication claims. (*Id.* at 9:3-17.) Defense Counsel argued that both statements should be excluded for several reasons: because the phone conversation was remote, occurring approximately three hours before police were called to the scene; because the case law relied upon by the prosecutor predated *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004), which "changes all the rules about testimonial hearsay"; and because the statements were ambiguous. (ECF No. 10-7. at 9:20-10:21.)

The trial court excluded the proposed testimony as hearsay and determined that it was not admissible under any exception. (*Id.* at 11:14-16.) The trial court found that Castle's statement that she would go to Andrade's house "could be very ambiguous. It doesn't mean what she's doing there. It doesn't necessarily mean she's afraid of Mr. DeJesus or that Mr. DeJesus threatened her." (*Id.* at 11:1-4.) With respect to Andrade's proposed testimony regarding what she heard Petitioner say to Castle, the trial court stated as follows: "Also, what Miss Andrade heard Pedro say: 'That's the way you want it.' That again is an ambiguous statement. I don't think it shows a state of mind and so, therefore, I will not allow those statements in evidence. Okay." (*Id.* at 10:22-11:16.)

Petitioner subsequently moved for a mistrial after the State's expert, forensic psychologist Louis Schlesinger, in the course of testifying, recounted portions of Andrade's statement regarding her telephone call to Castle on the night of the incident, despite the trial court's prior ruling barring the State's use of Andrade's statement in its case in chief. During Dr. Schlesinger's testimony

about what he referred to as the "prehomicidal context" of the case, Schlesinger repeated portions

of Andrade's statement:

> WITNESS: I also reviewed a statement by Denise Andrade.
>
> One of the victim's friends. She was in contact with the victim that evening. She indicated in her statement that she called Maria. Maria was going to go over there with the little girl Marjorie to spend some time. In the process of a phone conversation Denise overheard in the background the defendant saying so that's what you want Maria. Three times. Maria never arrived at Denise's house. And so Denise called about 10:15 to 10:20 in the evening. Denise said somebody picked up the phone and then hung it right up again on -
>
> DEFENSE COUNSEL: Judge, can I approach sidebar? [At sidebar] This litany of statements really is not related to the diagnosis, and all of these statements were precluded for various reasons during the trial earlier. To let them in through this witness seems extremely unfair to Mr. DeJesus. And I ask for a mistrial.

(*See* Tr. of Trial, Jan. 13, 2005 (ECF Nos. 10-11 & 10-12) at 159:12-160:7.) The prosecutor argued

that the statements were admissible in this context because Dr. Schlesinger had relied on them in

forming his opinion. (*Id.* at 160:8-20.) The court ruled, "I think it can come in here, but I don't

want everything that was said, all sorts of things, to come in that weren't put in the main case."

(*Id.* at 161:3-6.) The Court denied the request for a mistrial (*id.* at 163:12-13), but instructed the

prosecutor to "be careful especially of things that I didn't allow in the main case." (*Id.* at 163:14-

15.) The court also offered to give the jury a curative instruction, but defense counsel responded,

"I don't think you can cure the problem." (*Id.* at 164:4-7.) There was no further testimony about

Andrade's statement.

In charging the jury, the trial court also gave the following instruction regarding expert

testimony:

> As a general rule[,] witnesses can testify only as to the facts known to them. This rule ordinarily does not permit the opinion of a witness to be received as evidence.

However, an exception to this rule exists in the case of an expert witness who may give his or her opinion as to any matter in which he or she is versed and which is material to the case. . . .

You are not bound by such expert's opinion. But you should consider each opinion and give it the weight to which you deem it entitled[,] whether that be great or slight or you may reject it.

In examining each opinion[,] you may consider the reasons given for it, if any, and you may also consider the qualifications and credibility of the expert.

It is always within the special function of the jury to determine whether the facts on which the answer or testimony of an expert is based actually exist. The value or weight of the opinion of the expert is dependent upon[,] and is no stronger than[,] the facts on which it is based.

In other words, the probative value of the opinion will depend upon whether [,] from all of the evidence in the case[,] you find that those facts are true.

You may in fact determine from the evidence in the case that the facts that form the basis of the opinion are true, are not true, or are true in part only and in light of such findings[,] you should decide what effect such determination has upon the weight to be given to the opinion of the expert.

Your acceptance or rejection of the expert opinion will depend, therefore, to some extent on your findings as to the truth of the facts relied upon.

(ECF No. 10-12 at 281:21-282:15); see also *De Jesus*, 2006 WL 3053704, at *1–2 (recounting same). On this instruction, the jury found Petitioner guilty of murder, pursuant to N.J.S.A. 2C:11-3, and unlawful possession of a weapon, pursuant to N.J.S.A. 2C:39-4(d).

On direct appeal, Petitioner sought reversal of his conviction, contending in relevant part that the trial court's denial of his request for a mistrial was error. (*See* Pet'r's Letter Br. and App. on Appeal (ECF No. 10-17.) In his supporting brief, Petitioner argued that the admission of the statement violated N.J.R.E. 703 and applicable state law. (*Id.* at 8-12.) Petitioner also stated, without elaboration, that "the admission of the statement, through the backdoor of the expert's

testimony deprived defendant of his state and federal rights to confrontation of witnesses against

him, as well as hi[s] more general rights to due process and a fair trial." (*Id.* at 8.)

The Appellate Division rejected Petitioner's argument and affirmed his conviction "[a]fter

a detailed analysis of the record in light of the applicable law," finding that Petitioner's "argument

[was] without sufficient merit to warrant discussion in written opinion." *De Jesus*, 2006 WL

3053704, at *2 (citing N.J. Ct. R. 2:11-3(e)(2)). The Appellate Division provided the following

additional comments:

> "In general, a trial court is afforded 'considerable latitude regarding
> the admission of evidence,' and is to be reversed only if the court
> abused its discretion." *State v. Nelson*, 173 N.J. 417, 470 (2002)
> (quoting *State v. Feaster*, 156 N.J. 1, 82 (1998)). Under this
> standard, we will not substitute our judgment for that of the trial
> court, unless the ruling is "so wide of the mark that a manifest denial
> of justice resulted." *State v. Brown*, 170 N.J. 138, 147 (2001)
> (citations omitted). Defense counsel objected to Schlesinger's
> testimony after the statements were made. In reviewing the expert's
> entire testimony, the statement's content was ambiguous. Any
> possible prejudice was eliminated by the trial court's ruling to limit
> further testimony regarding Andrade's statement. Moreover, the
> instructions charging the jury "to determine whether the facts on
> which . . . testimony of an expert is based actually exist" and further
> stating that, "[t]he value or weight of the opinion of the expert is
> dependent upon[,] and is no stronger than[,] the facts on which it is
> based," properly directed the jury. There is no support in the record
> for a determination that the jury was unable to comply with these
> instructions, *State v. Winter*, 96 N.J. 640, 648-49 (1984), or that the
> remarks unfairly impacted the jury's verdict in any way.

*De Jesus*, 2006 WL 3053704, at *2.[2] The New Jersey Supreme Court denied Petitioner's petition

for certification. *State v. DeJesus*, 192 N.J. 68 (2007).

Petitioner subsequently filed a *pro se* post-conviction relief ("PCR") petition alleging

ineffective assistance of counsel. (Pro Se PCR Pet. (ECF No. 10-24); *see also* ECF No. 10-25.)

---

[2] The Appellate Division remanded for resentencing after the merger of count two into count one. *See De Jesus*, 2006 WL 3053704, at *2.

6

Counsel was assigned and a hearing was held on October 21, 2009. (*See* Tr. of PCR Hr'g, Oct. 29, 2009 (ECF No. 10-16).)

On PCR, Petitioner argued in relevant part that trial counsel was deficient because he failed to "adequately communicate and meet with the defendant during the pendency" of the case, and did not review discovery prior to trial or "properly prepare" a defense. (ECF No. 10-25 at 37-47.) Petitioner asserted counsel's oversights left him "unable to speak freely" and unsure of the proposed trial strategy, which caused uncertainty on the issue of whether Petitioner would exercise his right not to testify. (*Id.*) Additionally, Petitioner argued his counsel was ineffective for failing to ask for a passion/provocation charge.[3] (*Id.* at 14-19, 35.) He also argued his direct appeal counsel was ineffective for failing to raise the passion/provocation issue on direct appeal. (*Id.* at 55-58.)

On PCR, Petitioner submitted a certification, dated February 11, 2009, in support of his claims of inadequate attorney communication. (*See* ECF No. 10-27 at 166-69.) That certification states that "from the very outset, [Petitioner's] trial attorney did not keep [him] apprised of the status of [his] case while it was pending." (*Id.* at ¶ 2.) Petitioner further contends "although [his] trial counsel did visit with [him] at the jail, counsel did not bring discovery with him so [they] were able to go over the police report, statements and other materials necessary to prepare for [Petitioner's] case. Moreover, even during the trial of this matter, [Petitioner's] attorney did not come to see [Petitioner] at the jail to discuss [his] case or otherwise prepare for trial." (*Id.* at ¶ 3.) Petitioner contends the "only time that [he] was able to speak with [his] trial lawyer during the trial was while [he] was in Court, or for just a few minutes in the Courthouse before the Court proceedings." (*Id.* at ¶ 4.) Petitioner contends, however, that he was not comfortable talking with

---

[3] Although petitioner raised additional arguments in his PCR petition (ECF Nos. 10-25 & 10-24), the Court's factual recitation and analysis is limited to those arguments raised in this Petition.

his lawyer openly because "there was always a Sheriff's Officer present" during these times. (*Id.* at ¶ 4.) With respect to his decision not to testify at trial, Petitioner contends as follows:

> Ultimately, I did not testify on my own behalf at my trial because I was unable to speak freely with my lawyer and go over my case with him. Certainly my trial attorney never discussed with me testimony that might have been elicited during the trial should I have chosen to take the witness stand on my own behalf.

(*Id.* at ¶ 6.) Petitioner also states in the Certification that he wrote to the Public Defender's office to address his concerns, and that the Deputy Public Defendant responded to him on June 18, 2003, explaining that his trial counsel had been in trial for several weeks and thus had been unable to communicate with clients. (*Id.* at ¶ 7.) Although the Deputy assured Petitioner that his counsel would be in touch, counsel did not thereafter come to see him at the jail. Petitioner contends he went to trial without knowing trial counsel's strategy and "did not agree, nor would have agreed, to allow trial counsel to concede my guilt during the trial." (*Id.* at ¶ 8.) Finally, Petitioner's Certification states he tried to have his trial attorney removed from his case, but his application was dismissed by the Court on February 3, 2003 and again on April 23, 2004. (*Id.* at ¶ 9.) To support his lack of communication claim, Petitioner also offered the June 18, 2003 letter from Theodore V. Fishman, his counsel's supervisor, stating his attorney's trial schedule prevented communication with clients, but he would be in touch shortly after he had completed his next trial. (*See* ECF No. 10-25 at 125.)

The PCR court denied his petition without an evidentiary hearing. (*See* ECF No. 10-16.) On appeal, the Appellate Division relied on the findings of the PCR court, and rejected Petitioner's inadequate communication argument as follows:

> The [PCR] court determined defendant's challenge to counsel's alleged lack of communication "[wa]s merely a bald assertion." The PCR judge found:

> Defendant's certification in this matter omits the
> necessary information to support his claim since he
> does not indicate what information would have been
> available to counsel had there been more
> communication, what testimony he would have
> given had he had the opportunity to communicate,
> and most importantly, how that would have affected
> the outcome of the trial.

> Further, the [PCR] court determined the record specifically belied
> defendant's suggestion he was unaware of defense counsel's general
> strategy and did not know whether he would take the stand. The PCR
> judge cited defendant's colloquy with the trial judge, during which
> defendant responded affirmatively when asked whether defense
> counsel had discussed his right not to testify. The PCR judge further
> noted: "Counsel explained the intended course of [trial] events to
> the defendant on the record in open court"; both "the State's
> witnesses and defense experts reviewed the facts of the case with the
> defendant"; and "[d]efendant was present for pretrial evidentiary
> motions . . . [,] the presentation of the State's case[,] and the
> testimony of his own expert witnesses." Consequently, the PCR
> judge found defendant was apprised of the trial strategy. This
> strategy included a "decision to admit to a lesser included crime to
> avoid conviction on the greater [offense]," which "has been
> recognized as [an] effective trial strategy."

*DeJesus*, 2012 WL 5457335, at *1–2. The Appellate Division emphasized that Petitioner failed to

establish either prong of the *Strickland/Fritz* analysis:

> As identified by the PCR judge, defendant omits disclosure of the
> claimed excluded evidence; and his certification articulates no facts
> which he would have offered had he taken the stand. Thus, the
> general assertions of error gave the court no basis to assess whether
> counsel's conduct evinced ineffective assistance resulting in
> prejudice to defendant. *See State v. Mitchell*, 126 N.J. 565, 579
> (1992) (holding "specific facts" which "provide the court with an
> adequate basis on which to rest its decision" must be articulated to
> prove a basis for PCR).

> In order to satisfy *Strickland's* first prong, a defendant must show
> how counsel's performance was deficient, not simply say it was so.
> *Strickland, supra*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L. Ed.2d at
> 693. "[B]ald assertions" of ineffectiveness will not be sufficient to
> establish a prima facie case. *State v. Cummings*, 321 N.J. Super. 154,
> 170 (App. Div.), *certif. denied*, 162 N.J. 199 (1999). Rather, a

defendant "must allege facts sufficient to demonstrate counsel's alleged substandard performance . . . [,] supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Ibid.

Also "complaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy[.]" *Fritz*, *supra*, 105 N.J. at 54 (quoting *State v. Williams*, 39 N.J. 471, 489, *cert. denied*, 374 U.S. 855, 83 S.Ct. 1924, 10 L. Ed.2d 1075 (1963), overruled in part on other grounds, *State v. Czachor*, 82 N.J. 392 (1980)). *See also State v. Perry*, 124 N.J. 128, 153 (1991) (refusing to second-guess counsel's trial strategy). In fact, a defendant must demonstrate counsel's action "did not equate to sound trial strategy." *State v. Castagna*, 187 N.J. 293, 314 (2006) (internal quotation marks and citations omitted). "Trial counsel may not be considered ineffective merely because the trial strategy failed." *State v. Sheika*, 337 N.J. Super. 228, 243 (App. Div.), (citing *State v. Davis*, 116 N.J. 341, 357 (1989)), *certif. denied*, 169 N.J. 609 (2001). Strategic miscalculations or trial mistakes by counsel are insufficient to warrant reversal except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of a fair trial. *State v. Thomas*, 245 N.J. Super. 428, 432 (App. Div.1991), *appeal dismissed by* 130 N.J. 588 (1992).

Here, no evidence suggests counsel was ill-prepared for trial. Defendant's complaint of counsel's limited communication was made eighteen months before trial commenced, and Fishman's letter adequately explains the basis for that lapse. Trial counsel filed a number of pre-trial motions, secured an evaluation to assure defendant's competence to stand trial, challenged the admissibility of proffered State evidence, and vigorously cross-examined the State's witnesses. Defendant offers no basis to challenge the articulated defense strategy of admitting to a lesser offense in light of the State's overwhelming evidence of guilt. Nor does he articulate how he was prejudiced. Also, the PCR judge's reliance on the trial record to reject defendant's claimed lack of understanding of trial strategy, including with respect to the exercise of his right to testify, is well-supported.

Following our review of the arguments advanced, in light of the record and the applicable law, we find no flaw in the PCR judge's determination that defendant's claims of ineffective assistance failed to satisfy either prong of the *Strickland/Fritz* test.

*DeJesus*, 2012 WL 5457335, at *4–5.

10

The Appellate Division also rejected Petitioner's contention that his trial counsel was ineffective for failing to request a passion/provocation jury charge. Petitioner maintained his statement to police supported reasonable provocation. In that statement, he describes his arguments with Castle over her daughter, which occurred over several days, and a final argument that culminated with Castle telling him to "get out" and pushing him, which caused him to "los[e][his] mind." (*See* ECF No. 10-25 at 111-23.) The Appellate Division rejected this argument as follows:

> We reject [the passion provocation] claim as unfounded. We first note the challenge to the jury instructions is procedurally barred as it should have been presented on direct appeal. R. 3:22–4 (prohibiting post-conviction consideration of claims for relief which could have been raised in prior proceedings, including direct appeal). Notwithstanding this procedural bar, the PCR judge considered the merits of defendant's assertions, and properly found no rational basis to support a passion/provocation charge.
>
> "[T]he test for adequate provocation is provocation sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *State v. Oglesby*, 122 N.J. 522, 536 (1991) (citing *State v. Mauricio*, 117 N.J. 402, 412 (1990)). Generally, "[a]dequate provocation is not satisfied by 'words alone, no matter how offensive or insulting.'" *State v. Docaj*, 407 N.J. Super. 352, 368 (App. Div.) (quoting *State v. Crisantos*, 102 N.J. 265, 274 (1986)), *certif. denied*, 200 N.J. 370 (2009). And "[e]ven in instances of 'mutual combat,' the defendant's response must be proportionate to the provocation." *Id.* at 369 (citing *Oglesby*, *supra*, 122 N.J. at 536).
>
> Defendant's custodial statement asserts he and Castle were arguing when she told him "to get out" and pushed him one time. No other facts significant to passion/provocation were offered. Even evidence revealing Castle actually struck defendant would be insufficient to warrant a passion/provocation charge because the jury could not have found "a single blow by an unarmed woman could have aroused the passions of an ordinary man beyond the power of his control." *Oglesby*, *supra*, 122 N.J. at 536. *See also Docaj*, *supra*, 407 N.J. Super. at 359 (finding insufficient to support passion/provocation charge the defendant's wife's rejection of his plea to abandon divorce proceedings accompanied by a slap in the face). In light of this record, there was no reasonable and objective demonstration of provocation to warrant a passion/provocation instruction. *See State v. Abrams*, 256 N.J. Super. 390, 397 (App. Div.) (holding passion/provocation can be charged as a lesser included offense to murder "only when there is a rational basis in

the evidence for a verdict convicting the defendant of such an offense") (citations omitted), *certif. denied*, 130 N.J. 395 (1992). Therefore, we cannot find evidence showing trial counsel's representation was deficient due to the failure to request such a charge.

*DeJesus*, 2012 WL 5457335, at *5. The New Jersey Supreme Court denied certification. *State v. Dejesus*, 213 N.J. 538 (2013).

Petitioner raises three grounds for relief:

**(A) GROUND ONE:**

THE STATE COURT'S RULING AND PERMITTING THE STATE'S EXPERT TO TESTIFY AS TO INADMISSIBLE STATEMENTS TO POLICE BY A FRIEND [OF THE VICTIM] WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION OF FEDERAL LAW, THEREFORE THE WRIT SHOULD BE ISSUED.

**(B) GROUND TWO:**

PETITIONER RAISES INEFFECTIVE ASSISTANCE OF COUNSEL ON HIS TRIAL COUNSEL AND DIRECT APPEAL COUNSEL FOR NOT PRESENTING THE ISSUE OF PASSION/PROVOCATION IN VIOLATION OF HIS SIXTH AMENDMENT [RIGHTS,] WHICH DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF THE LAW AND THE RIGHT TO A FAIR TRIAL. AMENDS. VI, XIV, N.J. CONST. (1947) ART. 1 & 10.

**(C) GROUND THREE:**

THE DEFENDANT WAS DEPRIVED OF HIS CONSTIUTIONAL RIGHT TO TESTIFY ON HIS BEHALF AND HIS RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL, TO CLEARLY ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION OF FEDERAL LAW THEREFORE, THE WRIT SHOULD BE ISSUED.

(ECF No. 1 at 9-19.) The matter was initially assigned to the Honorable Freda L. Wolfson. The Court advised Petitioner of his rights pursuant to *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), and Petitioner responded that he wished to have his Petition ruled on as filed. (ECF Nos. 3 & 5.)

The Court ordered the State to answer the Petition, and the State filed its Answer and the relevant record on December 20, 2013. (ECF No. 10.) Petitioner did not file a traverse. On August 8, 2016, the matter was transferred to the undersigned. (ECF No. 11.)

## II.   LEGAL STANDARD

Section 2254(a) permits a court to entertain only claims alleging a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus. The statute reads as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Where a state court has adjudicated a petitioner's federal claim on the merits,[4] a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Harrington v. Richter*, 562 U.S. 86, 99 (2011).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding under 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal

---

[4] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

court must confine its examination under 28 U.S.C. § 2254(d)(1) to evidence in the record. *See Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2) on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); *see Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## III.   DECISION

### A. Admission of Expert Testimony

Petitioner first argues the admission of Andrade's statement through the state's expert, Dr. Schlesinger, violated clearly established federal law. The Court and the State construe Plaintiff to argue that the admission of the statement violated his federal rights under the Confrontation Clause. The State, however, contends in its brief that this claim was not fairly presented to the state court as a constitutional claim, and is thus barred under 28 U.S.C. § 2254 (b).[5] (ECF No. 10 at 3-

---

[5] Pursuant to the AEDPA, a habeas petitioner must "fairly present" a federal constitutional claim in order such claim to be available for federal habeas review. See 28 U.S.C. § 2254(b). In order to "fairly present" his claim, a prisoner must present in state court the factual and legal substance of his federal claim, in a manner that puts the state court on notice that a federal claim is asserted. *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). In this case, the state court's consideration of a petitioner's federal constitutional claim is not conclusive as to whether the claim was exhausted at the state level. Even if the state court does not consider the claim, it is still exhausted if the state court had the opportunity to address it. *Nara v. Frank*, 488 F.3d 187, 198 (3d Cir. 2007) (citing *Bond v. Fulcomer*, 864 F.2d 306, 309 (3d Cir. 1989)). To the extent that Petitioner's constitutional claims were not fairly presented and are thus unexhausted and/or procedurally defaulted, this Court can

15

5.) With respect to the merits of the claim, the State asserts that at the time of Petitioner's appeal, and at present, there is no "clearly established federal law, as determined by the Supreme Court of the United States," that dictates that the admission of Dr. Schlesinger's testimony recounting Andrade's statement violated the Confrontation Clause. (*Id.* at 6.) Finally, the State contends even if the admission of the testimony violated the Confrontation Clause, the error was harmless. (*Id.* at 7.)

The Confrontation Clause of the Sixth Amendment, applicable to the States through the Fourteenth Amendment, requires that a criminal defendant be given the right "to be confronted with the witnesses against him," and includes the right to cross-examine those witnesses. U.S. Const. amends. VI, XIV; *see Richardson v. Marsh*, 481 U.S. 200, 206 (1987). This guarantee applies to both federal and state prosecutions. *See Pointer v. Texas*, 380 U.S. 400, 403 (1965).

Here, Petitioner's confrontation clause claim is governed by *Crawford v. Washington*, 541 U.S. 36 (2004).[6] Prior to the Supreme Court's decision in *Crawford, supra*, Confrontation Clause jurisprudence permitted testimonial hearsay to be admitted against a defendant, provided it bore sufficient "indicia of reliability." That standard changed with the Supreme Court's decision in *Crawford.* In *Crawford*, petitioner Michael Crawford had stabbed a man who allegedly tried to rape his wife. At his trial, the State played a recording of the wife's statement to the police for the jury as evidence that the stabbing was not in self-defense, even though he had no opportunity for

---

nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion."); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here.").

[6] "Clearly established Federal law" for the purposes of the habeas statute is the law at the time of the last state-court adjudication on the merits of the petitioner's claim. *See Greene v. Fisher*, 565 U.S. 34, 38-40 (2011).

cross-examination. *See* 541 U.S. at 38-40. The Supreme Court held that a defendant's Sixth Amendment right of confrontation is violated by the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 56; *see also Davis v. Washington*, 547 U.S. 813 (2006).

The *Crawford* Court stated, however, that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."[7] 541 U.S. at 59 n.9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)); *see also Adamson v. Cathel*, 633 F.3d 248, 256 (3d Cir. 2011) ("Even after *Crawford*, however, '[t]he [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the

---

[7] Another threshold question for Confrontation Clause claims is whether the challenged statement is testimonial. *See Davis*, 574 U.S. at 821. "If it is not, the Confrontation Clause has no application." *Whorton v. Bockting*, 549 U.S. 406, 420 (2007). The *Crawford* Court defined "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford*, 541 U.S. at 51 (citations and internal quotation marks omitted). Although *Crawford* did not create a definitive class of testimonial statements, the Supreme Court did identify "various formulations" of testimonial hearsay, which generally include the following:

> [E]x parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Crawford*, 541 U.S. at 51-52. Here, the record as a whole is unclear regarding the origins of Andrade's statement. The Appellate Division, in its Opinion, indicates Ms. Andrade's statement was "made to police" but does not otherwise explain the circumstances surrounding the taking of the statement.

truth of the matter asserted.'") (citing *Crawford*, 541 U.S. at 59). Non-hearsay use of statements generally raises no Confrontation Clause concerns. *United States v. Jimenez*, 513 F.3d 62, 81 (3d Cir. 2008) ("Nonhearsay use of evidence as a means of demonstrating a discrepancy does not implicate the Confrontation Clause."); *United States v. Hinton*, 423 F.3d 355, 358 n.1 (3d Cir. 2005) ("As we held in *United States v. Trala*, testimonial statements are admissible without prior cross examination if they are not offered for their truth."). However, the Confrontations Clause may still be implicated if an <u>expressly incriminating</u> statement is used for non-hearsay purposes. *Adamson*, 633 F.3d at 258-59 & n.8 (citing *Street*, 471 U.S. at 417). In such circumstances, "[a]n appropriate limiting instruction is necessary to prohibit jury misuse of such evidence." *Adamson*, 633 F.3d at 258 (3d Cir. 2011) (finding that admission of the accomplices' statements without a limiting instruction was contrary to clearly established Supreme Court precedent, and reversing the District Court's decision and granting habeas petition).

The two-part statement at issue was presented to the jury during the course of Dr. Schlesinger testimony regarding the "pre-homicidal context" of the case, and was offered to explain the basis of his expert opinion.[8] Thus, as the State has argued, the statement appears to have been admitted for a purpose other than establishing the truth of the matter asserted, which is a permitted purpose under *Crawford*.

Here, however, the Court need not decide whether the admission of the statement violated the Confrontation Clause because any such error was harmless. On habeas review, a constitutional

---

[8] As noted by the State, Plaintiff's trial and appeal predate the Supreme Court's decisions in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), and *Williams v. Illinois*, 132 S. Ct. 2221 (2012), all of which addressed Confrontation Clause issues arising in the context of expert testimony, albeit of a much different character than the type of testimony offered here. The Court therefore does not rely on those decisions in determining whether the admission of the statement violated clearly established federal law.

error is considered harmless unless it can be shown to have "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946); *see O'Neal v. McAninch*, 513 U.S. 432, 439 (1995) (affirming that *Kotteakos* standard applies "in its entirety" to harmless error analysis on habeas review); *Fry v. Pliler*, 551 U.S. 112, 121 (2007) ("We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* . . . ."). Under *Brecht*, if a habeas court has a "grave doubt as to the harmlessness of [a constitutional error], it should grant relief." *O'Neal*, 513 U.S. at 445. In conducting this analysis, the court looks to "a host of factors," such as "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

The Third Circuit has previously applied the *Brecht* harmless-error analysis to habeas review of evidentiary decisions regarding the introduction of evidence in violation of the Confrontation Clause. *See Adamson*, 633 F.3d at 256 (Conducting a harmless error analysis on habeas claim and "conclud[ing] that the accomplice statements, combined with the lack of a limiting instruction, had a substantial and injurious effect on the jury's verdict."). Additionally, district courts in other circuits have similarly found "[t]he intersection of state law evidentiary rules, the nature of expert opinion evidence, and the constitutional issues raised in *Crawford* potentially involve complex legal questions. However, there is no need to engage in such an analysis if the challenged evidence was so insignificant that it could not have affected the jury's

19

verdict." *See Abelar v. Foulk*, Civ. No. CV 13-4401 CJC MRW, 2013 WL 8277137, at *3 (C.D. Cal. Nov. 4, 2013), *report and recommendation adopted*, Civ. No. CV 13-4401 CJC MRW, 2014 WL 1457776 (C.D. Cal. Apr. 14, 2014).

Here, there was overwhelming evidence that Petitioner stabbed Castle during an argument, including his own statement and the victim's statement to her daughter. Any error in admitting Dr. Schlesinger testimony regarding Andrade's statement was harmless because both parts of the challenged statement were ambiguous and shed no light on the issues of whether Petitioner had the requisite state of mind to commit knowing and purposeful murder or was intoxicated at the time he stabbed Castle. At best, the second part of the statement in which Andrade heard Petitioner stating, "so that's what you want Maria," suggests that Petitioner and Castle were arguing prior to her death, a fact that is abundantly clear from Petitioner's statement to police. The first portion of Andrade's statement about Castle's intention to go to Andrade's house is also memorialized in Petitioner's statement to police. (*See* ECF No. 10-25 at 111-23.) Although the trial court did not provide a curative instruction at the time the statement was introduced, such instruction was not required under *Street*, because the statement was not expressly incriminating. Furthermore, the trial court limited any further testimony regarding Andrade's statement and properly charged the jury regarding the weight to afford expert testimony.

For the reasons set forth above, Dr. Schlesinger's recounting of Andrade's statement could not have "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 622. Because any potential constitutional error in the admission of the statement was harmless, Ground One of the Petition is denied.

**B.  Ineffective Assistance of Counsel**

In Grounds Two and Three of his Petition, Petitioner contends his trial and appellate counsel provided ineffective assistance of counsel. The standard which governs claims of ineffective assistance of counsel is well established; such claims are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To support such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299. In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even where a petitioner is able to show that counsel's representation was deficient, the petitioner must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must

demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (quoting *Strickland*, 466 U.S. at 697-98); *see also Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

Finally, when a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable," which "is different from asking whether defense counsel's performance fell below Strickland's standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington*, 562 U.S. at 101). For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Grant*, 709 F.3d at 232 (internal quotation marks omitted) (emphases in original). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Cullen*, 563 U.S. at 189). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Grant*, 709 F.3d at 232. (internal quotation marks and citations omitted).

1.  Ineffective Assistance of Trial and Appellate Counsel for Failure to Present Issue of Passion/Provocation

22

Petitioner asserts his trial counsel was ineffective in failing to request that the jury be provided a passion/provocation manslaughter charge as a potential lesser included offense, and his appellate counsel was ineffective for failing to raise this issue on direct appeal. The State argues this claim is barred under 28 U.S.C. § 2254(b), because it was not exhausted in state court. (ECF No. 10 at 7-8.) With respect to the merits, the State argues the state court's rejection of Petitioner's ineffective assistance of counsel, passion provocation claim, was neither contrary to nor an unreasonable application of clearly established federal law. (*Id.* at 8.)

At trial, Petitioner's counsel utilized the defense of poly-substance abuse, a theory premised on showing that Petitioner was unable to form the requisite intent for a murder conviction. Petitioner contends, however, that trial counsel should have also presented a passion/provocation theory.[9] On PCR, Petitioner argued his statement to police supported reasonable provocation. In that statement, he describes his arguments with Castle over her daughter, which occurred over several days, and a final argument that culminated with Castle telling him to "get out" and pushing him, which caused him to "los[e][his] mind." (*See* ECF No. 10-25 at 111-23.)

The Appellate Division rejected Petitioner's arguments. The court first found the challenge to the jury instructions procedurally barred as it should have been presented on direct appeal. *DeJesus*, 2012 WL 5457335, at *5. Next, noting that the PCR judge also considered the merits of Petitioner's assertions, the Appellate Division agreed with the PCR judge that there was "no rational basis" under state law to support a passion/provocation charge in Petitioner's case:

> "[T]he test for adequate provocation is provocation sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *State v. Oglesby*, 122 N.J. 522, 536 (1991) (citing

---

[9] Such a theory, however, would have been inconsistent with counsel's primary defense that Petitioner was unable to form the intent to kill.

*State v. Mauricio*, 117 N.J. 402, 412 (1990)). Generally, "[a]dequate provocation is not satisfied by 'words alone, no matter how offensive or insulting.'" *State v. Docaj*, 407 N.J. Super. 352, 368 (App. Div.) (quoting *State v. Crisantos*, 102 N.J. 265, 274 (1986)), *certif. denied*, 200 N.J. 370 (2009). And "[e]ven in instances of 'mutual combat,' the defendant's response must be proportionate to the provocation." *Id.* at 369 (citing *Oglesby*, *supra*, 122 N.J. at 536).

Defendant's custodial statement asserts he and Castle were arguing when she told him "to get out" and pushed him one time. No other facts significant to passion/provocation were offered. Even evidence revealing Castle actually struck defendant would be insufficient to warrant a passion/provocation charge because the jury could not have found "a single blow by an unarmed woman could have aroused the passions of an ordinary man beyond the power of his control." *Oglesby*, *supra*, 122 N.J. at 536. *See also Docaj*, *supra*, 407 N.J. Super. at 359 (finding insufficient to support passion/provocation charge the defendant's wife's rejection of his plea to abandon divorce proceedings accompanied by a slap in the face). In light of this record, there was no reasonable and objective demonstration of provocation to warrant a passion/provocation instruction. *See State v. Abrams*, 256 N.J. Super. 390, 397 (App. Div.) (holding passion/provocation can be charged as a lesser included offense to murder "only when there is a rational basis in the evidence for a verdict convicting the defendant of such an offense") (citations omitted), *certif. denied*, 130 N.J. 395 (1992). Therefore, we cannot find evidence showing trial counsel's representation was deficient due to the failure to request such a charge.

*DeJesus*, 2012 WL 5457335, at *5.

Here, the Appellate Division's finding that trial counsel was not deficient for failing to request a passion/provocation charge was neither contrary to, nor involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[10] *Parker*, 132 S. Ct. at 2151 (quoting 28 U.S.C. § 2254(d)).

---

[10] In some circumstances, adequate provocation may be shown through a course of ill treatment that the defendant reasonably believed would continue. *See State v. Guido*, 40 N.J. 191, 191 A.2d 45, 56 (1963). The evidence adduced at trial suggested that Petitioner and Castle had been

Because the passion/provocation defense, as determined by state law, was not supported by the evidence, counsel was not ineffective for failing to request that it be charged. An attorney cannot be ineffective for failing to request a charge to which the defendant was not entitled. *See Gov't of Virgin Islands v. Lewis*, 620 F.3d 359, 372 (3d Cir. 2010). By extension, Petitioner's direct appeal counsel was not ineffective for failing to raise a meritless issue on appeal.[11] Accordingly, Ground Two of the Petition is denied.[12]

### 2.   Ineffective Assistance of Counsel with Respect to Testimonial Election

Petitioner also contends his trial counsel failed to adequately communicate with him during pretrial and trial proceedings, and that he did not testify on his own behalf because he was unable to speak freely with his attorney. (ECF No. 1 at 17-19.) Petitioner further contends as follows: "Had [Petitioner] been able to testify he could have explain[ed] to the jury exactly what went on between him and the victim and provided a rational basis for a passion/provocation instruction to the jury." (*Id.* at 18.)

---

arguing about her daughter for a relatively short period of time over her failure to attend school, and it is not unreasonable for the state court to have declined to apply this line of cases as the evidence did not demonstrate a level and/or length of ill treatment sufficient to justify the charge under state law.

[11] Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). An attorney's decision about which issues to raise on appeal are strategic, and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000).

[12] Petitioner argues the failure of his trial counsel to seek a passion/provocation charge and his appellate counsel's failure to raise this issue constitutes a *per se* violation of his right to effective counsel. (ECF No. 1 at 12-13.) Thus, he appears to argue his counsel failed to act in accord with the standards set forth in *United States v. Cronic*, 466 U.S. 648, 659-60, n.25 (1984), which holds that prejudice may be presumed in limited circumstances, such as where "counsel is . . . totally absent." Because neither trial nor appellate counsel was deficient for failing to raise the issue of passion/provocation, the Court need not separately address this argument.

A defendant has a constitutional right to testify on his or her own behalf.[13] *See generally Rock v. Arkansas*, 483 U.S. 44, 49–53 (1987). "The Strickland standard is applicable when a petitioner claims his attorney was ineffective by denying him his constitutional right to testify."[14] *Palmer v. Hendricks*, 592 F.3d 386, 394 (3d Cir. 2010) (citing *Matylinsky v. Budge*, 577 F.3d 1083, 1097 (9th Cir. 2009) (citation omitted)). Here, however, Petitioner has not alleged that he was unaware of his testimonial right or that his counsel disallowed him to exercise it. (*See* ECF No. 10-27 at ¶ 6.) As both the PCR judge and the Appellate Division noted, the trial record indicates that Petitioner did consult with counsel about the right to testify, that Petitioner did not want to testify, and that Petitioner wanted an instruction requiring jurors not to draw an adverse inference from his testimonial election. (*See* ECF No. 10-12 at 209:1-210:5.)

In considering Petitioner's claims of inadequate communication and its impact on his testimonial election, the Court need not consider whether trial counsel was deficient in his communications with Petitioner, because the Appellate Division reasonably determined that Petitioner failed to satisfy the prejudice prong of *Strickland* by failing to provide the facts he would have offered in support of his passion/provocation defense had he taken the stand. *See DeJesus*, 2012 WL 5457335, at *4–5. Petitioner contends only that he "could have explain[ed] to the jury exactly what went on between him and the victim and provided a rational basis for a passion/provocation instruction to the jury." (ECF No. 1 at 18.) It is dispositive that Petitioner's certification submitted on PCR fails to outline what, specifically, his hypothetical trial testimony

---

[13] Under Third Circuit precedent, defense counsel has a duty to inform defendant of this right, but a defendant may nevertheless waive it so long as the decision is "knowing and intelligent." *United States v. Pennycooke*, 65 F.3d 9, 11-13 (3d Cir. 1995).

[14] The Third Circuit has held that an attorney's failure to advise a defendant of his right to testify in his own defense is not the sort of structural defect for which the automatic reversal rule is reserved, and thus is subject to the *Strickland* analysis. *See Palmer*, 592 F.3d at 398.

would have been and how it would have supported a viable passion/provocation defense. As such, Petitioner has made no showing at all as to the prejudice element of his ineffective assistance claim, and his "stated desire to tell his side of the story falls far short of satisfying *Strickland's* prejudice element." *Palmer*, 592 F.3d at 395 (internal quotations and citations omitted). Accordingly, Ground Three of the Petition is denied.

### C. Certificate of Appealability

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, jurists of reason could not disagree that Petitioner's claims are lacking in merit. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

### IV.   CONCLUSION

For the reasons expressed in this Opinion, the Court **DENIES** the Petition and **DENIES** a certificate of appealability. An appropriate Order will follow.

Date:  January 6, 2017                    */s/ Brian R. Martinotti*
                                          **HON. BRIAN R. MARTINOTTI**
                                          **UNITED STATES DISTRICT JUDGE**

27